relieved them from their guaranty. When the notes were not paid, plaintiff sued defendants on the guaranty. It is the claim of plaintiff that defendants agreed to the taking of the notes, at the time they were made, and he produces a witness, an employé of plaintiff, who swears:

"I told him [Greenberg] that Mr. Lamport [the plaintiff] sent me down to ask Mr. Greenberg whether the acceptance of the notes would be satisfactory to him, in payment of the Fawer Slipper account, and he said it would be all right."

There is a conflict of testimony, but the court believed plaintiff's witnesses, and gave judgment for plaintiff for $72.80. There has been no revocation of the guaranty or termination thereof by defendants, either verbally or in writing. Defendants, however, claim that it was intended to cover merely the first purchase made by the company of plaintiff to the extent of $100. The defendant Greenberg swears: ."I gave a guaranty of $100 for the first purchase." This assertion does not appear to be directly contradicted by the plaintiff, although the theory of plaintiff's case was that the guaranty was continuous. It appears that goods were sold to the company by plaintiff, after the making of the guaranty, to the extent of $268.55; that of this sum $123.75 were apparently paid in cash; that $120 were paid, in five notes of $24 each, of which notes two remain unpaid; that the amount of these unpaid notes—i. e., $48—together with the $24.80, the amount remaining due and not included in any of the notes, make up the $72.80, sued for in this action. It will therefore be observed that the first purchases, to the extent of a greater sum than the amount of the defendants' guaranty, have been paid for. The wording of the guaranty itself would seem to imply that it was intended to cover only the first $100 worth of goods purchased. It reads:

"* * * We hereby guaranty the sum of $100, the amount which they will sell to the Fawer Slipper Company," etc.

That is to say, the plaintiff was to sell $100 worth of goods to the company, which defendants were to guaranty would be paid for. This language hardly seems to imply that the guaranty is to cover an indefinite number of purchases up to the sum limited of $100. It seems to us that the court below misconstrued the meaning of the guaranty.

The judgment is reversed, and a new trial is granted, with costs to appellant to abide the event.

---

(108 App. Div. 335)

## In re HERMAN.

(Supreme Court, Appellate Division, First Department. November 2, 1905.)

1. ELECTIONS—NOMINATION BY PETITION—OBJECTIONS—TIME TO DETERMINE.
    The statute providing that the final order by the board of elections on the validity of petitions for nominations to public office must be made on or before the last day for filing the certificates of nominations is directory, and the board, when not unnecessarily delaying the matter, may after the time stated hear and determine objections to petitions for nominations.

2. SAME—NUMBER OF ELECTORS.
    A petition for the nomination of a candidate for alderman in the city of New York need not contain more than 100 names.

**3. SAME—QUALIFICATIONS OF ELECTORS.**

　　A nonregistered voter may sign a petition for the nomination of a candidate for a public office, though the statute uses the words "voter" and "legally qualified voter or elector."

**4. SAME—NUMBER OF ELECTORS.**

　　A petition for the nomination of a candidate for justice of the Municipal Court in the city of New York need not be signed by more than 500 names; the office of justice being a "municipal office," within the statute requiring that candidates for public office other than for "municipal offices" can only be nominated by petition containing 1,000 names.

**5. SAME—DISQUALIFICATION OF ELECTORS.**

　　A person taking part in a party primary is not for that reason alone disqualified from signing a petition for the nomination of an independent candidate.

Appeal from Special Term.

Proceedings by Moses Herman and others to review the action of the board of elections of the city of New York in determining objections to petitions for nominations to public office. From an order of the court at Special Term, the aggrieved parties appeal. Affirmed.

The following is the opinion of Justice Stover at Special Term.

A number of proceedings have been brought for the purpose of reviewing the actions of the board of elections, and have been argued by counsel in groups, cases presenting the same question being presented together, and have so been considered. It is first objected that the board had no authority to decide objections after midnight of October 23d. The statute provides that the final order in the premises must be made on or before the last day for filing the certificate of nomination, which is at least 15 days before the election, if filed with the board of elections of the city of New York. The papers upon this application show that the board of elections did not complete their examination of objections until after midnight of the 23d, which was the fifteenth day before election, and the decisions upon the objections were made at about 4 a. m. on the morning of the 24th; the board being in sessions during the day and night of the 23d. There is no claim made that the board had intentionally delayed the proceeding; but, upon the contrary, it is quite apparent that the board had diligently endeavored to discharge its duties. The application in the cases brought to the court was speedily made and submitted on the 25th, being the earliest time that the matter could be brought before the court after the decision of the board of elections. It was held in Matter of Hennessy, 164 N. Y., at page 396, 58 N. E., at page 447, that the direction of the statute as to time was directory, and not mandatory; and within the authority and reasoning of that case these applications are properly before the court. It would seem that any other holding would prevent in many cases a review by the court, and place it within the power of a board of elections to entirely defeat the object of the statute by withholding a decision until midnight of the fifteenth day before the election. Until some controlling authority is cited I am not prepared to make a ruling involving such consequences. This objection goes to all of the cases under consideration.

Other questions are raised in particular cases calling for a construction of the statute. The first of these is as to the number of signatures required to nominate an alderman. It is claimed on behalf of some of the objectors that 500 signatures are necessary to the nomination of an alderman. Some of the certificates have less than 500. I feel controlled by the decision in the case of Behrmann, affirmed in 168 N. Y., 367, 61 N. E. 283. The opinion of the Appellate Division may be found in 65 App. Div. 11, 72 N. Y. Supp. 293. Until this case is overruled it is binding upon the Special Term, and therefore it is not necessary that the petition should contain more than 100 names.

Objection is also made that the signers upon some of the petitions are not registered voters. I do not think it was the intention of the statute to require that an elector or voter should be registered in order to join in a certificate of independent nomination. And while the words "voter" and "legally

qualified voter or elector" are used in different places it may be fairly said to
embrace a legally qualified voter. Without necessarily including his regis-
try at the particular election, he must be legally qualified as an elector or
voter at general and special elections within his district. But if he should
neglect to register, and does not think that that is a qualification of an elector
as used in the Constitution and fundamental statute of the state, and unless
it would clearly appear that a statute regulating the conduct of elections in-
tended to go to the disqualification of any particular elector or class of elect-
ors, such regulation ought not to ·limit the constitutional right of a voter.
The statute was intended for the orderly conduct of elections, and not for the
purpose of preventing citizens discharging their ordinary duties: It should
be so construed as to permit such voters and electors as are recognized by the
Constitution to take part in all the preliminaries of an election, and it is
not necessary that he should declare his intention to vote at the election, or
that he should actually intend to vote. It follows, therefore, that the ob-
jection to those signers that were not registered is not well taken.

One of the petitions seeks to place in nomination a justice of the Mu-
nicipal Court, and does not contain the names of 1,000 electors· of the district,
but does contain the names of 500 electors. The statute requires that can-
didates for public office other than for municipal offices to be voted for in a
district less than the whole state, but greater than a town or ward of a city,
can only be made by 1,000 electors of the district. I think the office of justice
of the Municipal Court is a municipal office, and is embraced under the clause
which requires 500 electors on the certificate for nomination. His title is
that of a municipal officer. His jurisdiction is limited to the municipalty,
and his entire duties are performed within the municipal territory. His
compensation is paid by the city, and there is no indication anywhere of other
than municipal duties to be performed by him. I think it may properly be
held that he is a municipal officer.

Another objection urged is that some of the parties who have signed the
independent certificate have voted at one of the party primaries; the con-
clusion being that one who has voted at a party primary is disqualified from
thereafter joining any independent movement or taking part in independent
nominations. I do not think that this was the intent of the statute. A party
may, without violating any of the provisions of the statute, take part in a
party caucus, and, if dissatisfied with the result, or upon changing his mind
for any reasons, or without assigning any reasons, thereafter join an in-
dependent movement and support an independent candidate at the polls.
The widest latitude is given the voter, and he is at liberty to change his
views at any time before his ballot is cast. And so he may at any time
change his mind as to his party adherence and take part in the nomination
of independent candidates. There is no suggestion of actual fraud, but the
objection rests solely upon the fact that having taken part in a party prima-
ry he has signed an independent certificate. I think the objection is not well
taken.

It is objected that the board has no power to act on nominations filed after
October 18th, and that sufficient notice was not given to candidates of the ob-
jections. This involves to some extent the original objection as to the juris-
diction, but I think the statute is broad enough to confer upon the court
power to entertain the proceeding and to make such order as may be proper
under the circumstances. It is quite true, perhaps, that sufficient notice
was not given to candidates to answer objections; but I have upon this ap-
plication given the fullest opportunity to obtain the true facts to the end that
no one may be deprived of his rights. The application is summary, and neces-
sarily must be disposed of in time to permit the board to perform its fur-
ther duties. But I have in each case considered the objection and all of the
papers submitted, with a view of as far as possible protecting each indivi-
dual in his rights.

In the case of the nomination of Freidel for member of assembly and Sil-
verstone for the office of alderman in the Eighth aldermanic and assembly
districts of the city, an examination of the certificate filed, it seems to me,
shows upon the face of it such irregularity as to render it illegal. I have
endeavored to separate the valid and invalid portions of it, in order, if pos-

sible, to sustain the certificate; but I find it impossible to do so. It seems to be so grossly irregular as to render the whole certificate ineffective for any purpose.

I have thus covered the general propositions of law involved upon the application, and, except where I have been satisfied that the board passed upon the questions of fact without having all the facts before it, and where they have been supplied on this hearing, or where it is apparent upon the face of the papers that they acted upon an erroneous view of the law, as above stated, I have not interfered with their action. But in such cases I have endeavored to make such order as would protect the rights of the parties and conserve the public interests.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, CLARKE, and LAUGHLIN, JJ.

Henry W. Taft, for appellant.
Theodore Connoly, for respondent.

PER CURIAM. For the reasons assigned by the justice sitting at Special Term, the order appealed from should be affirmed.

(108 App. Div. 108)

In re WALSH et al.

(Supreme Court, Appellate Division, First Department. November 2, 1905.)

ELECTIONS—NOMINATIONS—CERTIFICATE—DETERMINATION OF ELECTION BOARD—REVIEW.

In the absence of the filing with the election board of written objections to a certificate of nomination of a candidate to an office, as required by the express provisions of Election Law, Laws 1896, p. 930, c. 909, § 65, there is nothing for the court to review.

Appeal from Special Term.
Petition by Edward J. Walsh and another to review the action of the board of elections of the city of New York in determining objections to petitions for nominations of candidates to public office. From an order denying the petition, the petitioners appeal. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, CLARKE, and LAUGHLIN, JJ.

Henry W. Taft, for appellants.
Theodore Connoly, for respondent.

PER CURIAM. No written objections were filed with the election board, as provided in section 65 of the election law (Laws 1896, p. 930, c. 909). The power of the Supreme Court or a judge thereof is limited to a review of the determination of the board of election. There having been no determination, there is nothing to review.

The order should be affirmed.

(109 App. Div. 398)

GREENWOOD v. JUDSON.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1905.)

1. EXECUTORS AND ADMINISTRATORS—CLAIM FOR SERVICES—INTENTION—RELATIVES.

Where plaintiff, who for 14 years had been a school teacher, receiving $8 per week, was induced by her uncle to cease teaching and to assist him in managing his business, which she did for a period of 18 years,